**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-_____

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

    Plaintiff,

v.

**BRINKER RESTAURANT CORPORATION d/b/a CHILI'S GRILL & BAR and
BRINKER INTERNATIONAL PAYROLL COMPANY, L.P.,**

    Defendants.

**COMPLAINT AND JURY TRIAL DEMAND**

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of sex and retaliation, and to provide appropriate relief to Christina Mentzer and other aggrieved female employees who were adversely affected by such practices during their employment with Brinker Restaurant Corporation d/b/a Chili's Grill & Bar and Brinker International Payroll Company, L.P. ("Defendants" or "Chili's"). As alleged with greater particularity below, the Equal Employment Opportunity Commission ("EEOC") alleges that Mentzer and other aggrieved individuals were sexually harassed by managerial officials, supervisors, and/or co-workers at the Chili's restaurant in Cañon City, Colorado, including, but not limited to, unwelcome verbal harassment, sexual gesturing, and inappropriate touching, which created a hostile work environment for them because of their sex. The EEOC also alleges that Mentzer and other aggrieved female employees suffered retaliation because of their opposition to unlawful employment practices. Finally, the

EEOC alleges that Mentzer and other aggrieved female employees were forced to resign their employment because of the sexual harassment, the retaliation they experienced, and/or Defendants' failure to provide appropriate preventive or remedial relief.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado.

## PARTIES

3. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all relevant times, Defendants have continuously been doing business in the State of Colorado and Cañon City and have continuously had at least 15 employees.

5. At all relevant times, Defendants have continuously been employers engaged in an industry affecting commerce under Sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6. Upon information and belief, at all relevant times, Defendants have been a joint employer and/or an integrated enterprise that employed the class of females adversely affected by the unlawful employment practices.

## ADMINISTRATIVE PROCEDURES

7. More than 30 days prior to the institution of this lawsuit, Christina Mentzer filed a charge with the EEOC alleging violations of Title VII by Chili's.

8. The EEOC provided Chili's with notice of the charge of discrimination.

9. The EEOC investigated the charge of discrimination.

10. On September 18, 2018, the EEOC issued to Defendants a Letter of Determination finding reasonable cause to believe that Title VII was violated.

11. The EEOC's determination included an invitation for Defendants to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

12. Defendants participated with the EEOC in this informal conciliation process.

13. On February 15, 2019, the EEOC issued to Defendants a Notice of Failure of Conciliation advising Defendants that the EEOC was unable to secure from Defendants a conciliation agreement acceptable to the EEOC.

14. All conditions precedent to the institution of this lawsuit have been fulfilled.

## GENERAL ALLEGATIONS

**A. Christina Mentzer**

15. Christina Mentzer was hired as a server at the Chili's restaurant in Cañon City on September 1, 2015.

16. As a server, Mentzer reported to Assistant Manager Jimmy Mathews, Manager David Gonzales, Manager Michael Saiz, and Managing Partner Brian Ortega.

17. During her employment, Mentzer was repeatedly sexually harassed by Mathews.

18. For example, Mathews frequently made sexually inappropriate comments to Mentzer.

19. On multiple occasions, when asking for dishes from Mentzer on the cook line, Mathews would request "blue balls" instead of blue bowls.

20. Mathews would then make comments to Mentzer about "blue balls."

21. Mathews also made sexual advances on Mentzer.

22. Mathews made comments to Mentzer like "I know you want me."

23. Mathews talked openly in front of Mentzer and other Chili's employees about female body parts and his sexual performance.

24. In addition, Mathews frequently sexualized everyday conversations.

25. For instance, when a reference to hot plates was made in conversation, Mathews made a comment to Mentzer like "Not as hot as you."

26. When Mentzer made a comment that a product was good for her skin, Mathews replied: "I know what else is good for your face."

27. When Mentzer remarked that a sauce on the food was not wet enough, Mathews replied that he would get Mentzer "wet," and he squeezed the sauce out of the sauce bottle in a sexually suggestive manner.

28. Mathews made comments in front of Mentzer that objects (like a stack of cups) resembled genitals.

29. Mathews made comments in front of Mentzer on how to organize food on the plate so that it would look like breasts or a penis.

30. On one occasion, when Mentzer was in the cooler, Mathews walked in, stretched out his arms, and made a sexual advance on Mentzer.

31. Mentzer was able to duck under Mathews's arm to leave the cooler.

32. Mentzer believed she might have been sexually assaulted if she hadn't escaped.

33. Ortega also sexually harassed Mentzer while she worked at Chili's.

34. Ortega made comments to Mentzer in which he compared himself sexually to Mentzer's boyfriend.

35. Ortega expressed to Mentzer that he wanted to have sex with her and he could perform better sexually than her boyfriend.

36. Ortega called Mentzer his "wife" or his "second wife."

37. Ortega made comments to Mentzer about the color of her underwear.

38. Ortega repeatedly told Mentzer that she was beautiful.

39. Ortega's comments to Mentzer about her appearance included references to Mentzer's body.

40. Ortega told Mentzer that she walked sexy.

41. Ortega made a comment to Mentzer that she had "porn star" hair.

42. Ortega made a comment to Mentzer in front of other servers about a customer potentially raping her and giving her a sexually transmitted disease.

43. Ortega warned Mentzer not to go outside the restaurant to give the customer items he had left behind because she could be raped and get HIV.

44. Ortega also said Mentzer could get pregnant from the rape and would either need to keep the baby or get an abortion.

45. On one occasion, Ortega touched Mentzer's waist while commenting how skinny she was and how good she looked.

46. On another occasion, Ortega put his hands on Mentzer near her crouch area and fastened her belt.

47. Ortega threw ice cubes down the front of Mentzer's shirt.

48. To retrieve the ice cubes, which would sometimes fall into her bra, Mentzer would have to lift her bra or bend over.

49. Ortega then stood very close to Mentzer to look down her shirt.

50. During her employment, Mentzer told Mathews to stop his offensive conduct.

51. Mentzer also rebuked Mathews's advances.

52. Mathews's harassment continued.

53. During her employment, Mentzer told Ortega to stop his offensive conduct.

54. Mentzer also rebuked Ortega's advances.

55. Ortega's harassment continued.

56. In addition, Mentzer complained to Manager David Gonzales about Mathews's inappropriate sexual behavior.

57. Gonzales responded that Mathews would be talked to but did not explain further.

58. Mathews's harassment continued after Mentzer complained to Gonzales.

59. After Mentzer rebuked Mathews's and Ortega's advances and complained to Gonzales, her scheduled hours were reduced.

60. After Mentzer rebuked Mathews's and Ortega's advances and complained to Gonzales, she was less frequently assigned to opening night shifts.

61. The opening shift for the night shift started at 3:30 pm and went until approximately 8:00 - 8:30 pm.

62. Mentzer preferred opening night shifts because she was a single mother with a young daughter and was less able to find childcare past 8:30 pm.

63. Chili's servers also tended to make more money on night shifts than on day shifts.

64. Having to work past 8:30 pm meant there were times when Mentzer had to have her babysitter drop her 8-year-old daughter off at the restaurant and her daughter then slept in a booth.

65. Initially, after her scheduled hours were reduced, Mentzer was able to pick up shifts from other servers.

66. This meant, however, that she had to take what was available to her and was less able to work opening night shifts.

67. After the end of the summer season, Mentzer was less able to pick up shifts, resulting in a reduction of hours and a reduction in income.

68. When Chili's management did nothing to stop the sexual harassment that Mentzer reported, Mentzer realized her employer would do nothing to protect her from the managers who were sexually harassing her and retaliating against her.

69. When, in addition to the unrelenting sexual harassment, Mentzer's hours were reduced and she was scheduled for or forced to work shifts that made childcare more difficult, Mentzer's working conditions became intolerable and hopeless.

70. Mentzer was forced to resign from Chili's, and she did so on December 30, 2016.

**B. Lindsey Marchello**

71. Lindsey Marchello was hired as a hostess at the Chili's restaurant in Cañon City in August 2015.

72. During her employment, Marchello was repeatedly sexually harassed by Mathews.

73. Mathews made repeated remarks to Marchello about her appearance.

74. Mathews also made sexual advances on Marchello.

75. Mathews made comments to Marchello about the two of them going on dates.

76. Mathews stared at Marchello from behind the hostess stand.

77. Mathews made comments to Marchello about her butt.

78. On one occasion, Mathews made an inappropriate remark to Marchello about what he wanted to do to her.

79. During her employment, Marchello told Mathews to stop his offensive conduct.

80. Marchello also rebuked Mathews's advances.

81. When Marchello rebuked Mathews's sexual advances, he made belittling comments to her.

82. Mathews's harassment of Marchello continued.

83. On one occasion while in front of Marchello, Ortega rubbed a glittery ornament on the body of a female employee, including near the female employee's chest area.

84. In June 2016, Mathews made a comment to Marchello about standing outside her window in his underwear holding flowers.

85. Based on this comment, Marchello feared that Mathews was stalking her at her home.

86. Marchello resigned her position at Chili's the next day.

87. When Marchello told Ortega that she was resigning from Chili's, she described Mathews's sexual harassment.

88. Ortega responded that Marchello was lying.

89. Marchello also told Ortega about Mathews's comment that he wanted to stand outside her window in his underwear.

90. Ortega laughed and said that he didn't think Mathews would make that comment.

91. Ortega told Marchello that if she put Chili's down as a reference, Ortega would tell potential employers that Marchello was unreliable.

### C. Other Aggrieved Individuals

92. Like Mentzer and Marchello, other female employees were sexually harassed by managerial officials, supervisors, and/or co-workers at the Chili's location in Cañon City.

93. Like Mentzer and Marchello, other female employees have been subjected to unwelcome sexual comments and sexual innuendo by Chili's managerial officials, supervisors, and/or co-workers at the Chili's location in Cañon City.

94. Like Mentzer and Marchello, other female employees have been subjected to unwelcome sexual conduct and/or touching by Chili's managerial officials, supervisors, and/or co-workers at the Chili's location in Cañon City.

95. Like Mentzer and Marchello, other female employees have been subjected to a hostile work environment based on sex at the Chili's location in Cañon City.

96. While employed at the Chili's location in Cañon City, other female employees complained about sexual harassment by managerial officials, supervisors, and/or co-workers.

97. While employed at the Chili's location in Cañon City, other female employees complained about inappropriate sexual conduct by managerial officials, supervisors, and/or co-workers.

98. While employed at the Chili's location in Cañon City, other female employees have specifically complained about inappropriate sexual behavior by Mathews.

99. On multiple occasions, Mathews called female server Christa Krauth (formerly Christa Mowers) "tits."

100. The inappropriate comments by Mathews to Krauth were reported to Ortega.

101. The inappropriate comments by Mathews to Krauth were reported to Manager David Gonzales.

102. The inappropriate comments by Mathews to Krauth were reported to Manager Michael Saiz.

103. Mathews was not disciplined by Chili's management for his inappropriate comments to Krauth.

104. Mathews was not written up by Chili's management for his inappropriate comments to Krauth.

105. Mathews was not suspended by Chili's management for his inappropriate comments to Krauth.

106. On one occasion in 2015, Mathews kicked a female hostess from behind.

107. Mathews's kick knocked the hostess to the ground.

108. Mathews's kick injured the hostess.

109. Upon information and belief, Mathews's physical conduct toward the female hostess was reported to Chili's management.

110. Upon information and belief, Mathews was not disciplined by Chili's management for his physical conduct toward the female hostess.

111. Upon information and belief, Mathews was not written up by Chili's management for his physical conduct toward the female hostess.

112. Upon information and belief, Mathews was not suspended by Chili's management for his physical conduct toward the female hostess.

113. In 2016, female hostess Lindsay Bufmack complained to Ortega about Mathews's behavior.

114. Ortega became aware that Mathews's conduct made Bufmack uncomfortable.

115. Chili's did not investigate Bufmack's complaint.

116. Chili's took no remedial measures relating to Bufmack's complaint.

117. In 2016, Manager David Gonzales received a complaint from a female employee about Mathews.

118. The female employee complained to Gonzales that Mathews made her uncomfortable and creeped her out.

119. Gonzales did not discipline Mathews for his conduct toward the female employee.

120. Gonzales did not write up Mathews for his conduct toward the female employee.

121. Gonzales did not suspend Mathews up for his conduct toward the female employee.

122. Chili's did not investigate the complaint made by the female employee to Gonzales.

123. Chili's took no remedial measures relating to the female employee's complaint to Gonzales.

124. Manager Michael Saiz also received a complaint from a female employee about Mathews.

125. Female hostess Brittany Donahoo reported to Saiz that Mathews spent a lot of time at the hostess stand.

126. Chili's did not investigate Donahoo's complaint.

127. Chili's took no remedial measures relating to Donahoo's complaint.

128. Upon information and belief, while employed by Chili's, Mathews has not been disciplined by management for inappropriate behavior related to female employees.

129. Upon information and belief, while employed by Chili's, Mathews has not been written up by management for inappropriate behavior related to female employees.

130. Upon information and belief, while employed by Chili's, Mathews has not been suspended by management for inappropriate behavior related to female employees.

131. While employed by Chili's, Mathews has not been given any training by Chili's on sexual harassment since his new employee training in 2002.

132. Ortega has not received any training on sexual harassment since 2012.

## STATEMENT OF CLAIMS

133. Since at least 2016, Defendants have engaged in unlawful employment practices at the Chili's location in Cañon City, in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-3(a).

### FIRST CLAIM FOR RELIEF - Sexual Harassment/Hostile Work Environment
### (42 U.S.C. § 2000e-2(a))

134. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

135. Defendants discriminated against Mentzer and other aggrieved female employees in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), by harassing them and creating a hostile work environment because of their sex, female.

136. The offensive conduct described in the preceding paragraphs was sufficiently severe or pervasive to alter the terms and conditions of employment for Mentzer and other aggrieved female employees.

137. As managing partner, the actions of Ortega constitute the actions of Defendants for which they are directly liable.

138. As a manager, the actions of Mathews constitute the actions of Defendants for which they are directly liable.

139. Defendants failed to take reasonable measures to prevent and promptly correct sexually harassing behavior in the workplace.

140. Defendants knew of, or in the exercise of reasonable care should have known of, the hostile or offensive work environment suffered by Mentzer and other aggrieved female employees because of their sex.

141. Female employees at the Chili's location in Cañon City repeatedly complained to management about the hostile or offensive work environment, but Defendants negligently failed to take timely preventative or remedial actions.

142. The effect of the practices complained of above has been to deprive Mentzer and other aggrieved female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex.

143. The unlawful employment practices complained of above were intentional.

144. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mentzer and other female employees of Defendants.

## SECOND CLAIM FOR RELIEF – Retaliation
## (42 U.S.C. § 2000e-3(a))

145. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

146. Defendants unlawfully retaliated against Mentzer and other aggrieved female employees in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a), by discriminating against them for opposing unlawful employment practices, including sexual harassment.

147. Mentzer and other aggrieved female employees who opposed the sexual harassment and/or the hostile work environment at the Chili's location in Cañon City suffered adverse terms and conditions of employment because they opposed sexual harassment.

148. Mentzer and other aggrieved female employees who complained to management about the sexually hostile work environment at the Chili's location in Cañon City suffered adverse terms and conditions of employment because they complained about sexual harassment.

149. For example, after Mentzer refused to comply with sexual advances of Chili's managers and complained about sexual harassment, she was assigned less hours and less desirable shifts.

150. The effect of the practices complained of above has been to deprive Mentzer and other aggrieved female employees of equal employment opportunities and otherwise adversely affect their status as employees because they opposed unlawful employment practices.

151. The unlawful retaliatory employment practices complained of above were intentional.

152. The unlawful retaliatory employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mentzer and other female employees of Defendants.

**THIRD CLAIM FOR RELIEF - Discharge and/or Constructive Discharge**
**(42 U.S.C. §§ 2000e-2(a), 2000e-3(a))**

153. The allegations contained in the foregoing paragraphs are hereby incorporated by reference.

154. Mentzer and other aggrieved female employees who worked at the Chili's location in Cañon City were discharged and/or constructively discharged in violation of Section 703(a) of Title VII, 42 U.S.C. § 2000e-2(a), and Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

155. Mentzer and other aggrieved female employees were discharged and/or constructively discharged because of their sex; because of the sexual harassment they endured and Defendants' failure to prevent or remedy the hostile work environment; and/or in retaliation for their opposition to unlawful employment practices.

156. The effect of the practices complained of above has been to deprive Mentzer and other female employees of equal employment opportunities and otherwise adversely affect their status as employees because of their sex and because they opposed unlawful employment practices.

157. The unlawful employment practices complained of above were intentional.

158. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Mentzer and other female employees of Defendants.

**PRAYER FOR RELIEF**

Wherefore, the EEOC respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, successors, assigns and all persons in active concert or participation with

15

them, from engaging in any employment practice which discriminates on the basis of sex, including sexual harassment, and from retaliating against employees who oppose such unlawful employment practices.

  B. Order Defendants to institute and carry out policies, practices and programs which provide equal employment opportunities for women and for individuals who oppose unlawful employment practices and which eradicate the effects of Defendants' past and present unlawful employment practices, including sex discrimination, sexual harassment, and retaliation.

  C. Order Defendants to make whole Mentzer and other aggrieved female employees by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

  D. Order Defendants to make whole Mentzer and other aggrieved female employees by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in the foregoing paragraphs above, in amounts to be determined at trial.

  E. Order Defendants to pay Mentzer and other aggrieved female employees punitive damages for Defendants' malicious and reckless conduct, as described in the foregoing paragraphs above, in amounts to be determined at trial.

  F. Grant such further relief as the Court deems necessary and proper in the public interest.

  G. Award the EEOC its costs of this action.

## JURY TRIAL DEMAND

The EEOC requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED this 2nd day of April, 2019.

James Lee
Acting General Counsel

Gwendolyn Reams
Associate General Counsel

Mary Jo O'Neill
Regional Attorney
Phoenix District Office

Rita Byrnes Kittle
Supervisory Trial Attorney

*/s/ Laurie Jaeckel*
Lauren Jaeckel
Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Denver Field Office
303 E. 17th Avenue, Suite 410
Denver, CO 80203
Phone: (303)-866-1381
Email: lauren.jaeckel@eeoc.gov

**PLEASE NOTE**: For purposes of service upon the EEOC, it is sufficient that pleadings, notices, and court documents be served upon the Trial Attorneys. Duplicate service is not required on the General Counsel and Associate General Counsel in Washington, D.C.